UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                            Chapter 11, Subchapter V

AVIATION SAFETY RESOURCES, INC.,                  Case No. 6:23-bk-4639-GER
S.E., INC.,                                       Case No. 6:23-bk-4641-GER
PIONEER AEROSPACE CORPORATION                     Case No. 6:23-bk-4643-GER

        Debtors.                                  *Joint Administration Motion Pending*

_____/

S.E., INC.,                                       Case No. 6:23-bk-4641-GER
PIONEER AEROSPACE CORPORATION                     Case No. 6:23-bk-4643-GER

        Applicable Debtors.

_____/                *Emergency Hearing Requested*

### DEBTORS' EMERGENCY MOTION FOR
### AUTHORITY TO USE CASH COLLATERAL

---

#### STATEMENT OF RELIEF REQUESTED

**The Debtors seek authority to use cash collateral to fund their operating expenses and the costs of administering these Chapter 11 cases in accordance with proposed budgets attached hereto as <u>Composite Exhibit B</u>. The Debtors' cash collateral use is to conduct operations to get to a closing under a sale of substantially all of their operating assets within an approximately 30-day period. The Debtors believe that certain lenders, as described below, may assert security interests in cash collateral. Additionally, the Debtors are requesting by separate motion authorization to obtain DIP financing. As adequate protection, the Debtors propose to grant the pre-petition and post-petition lenders replacement liens to the same extent, validity, and priority as existed as of the Petition Date.**

---

PIONEER AEROSPACE CORPORATION d/b/a ASR-Pioneer ("**Pioneer**") and S.E., INC. d/b/a Strong Enterprises ("**Strong**") (collectively, the "**Debtors**"), respectfully request the entry of an order authorizing the use of cash collateral (the "**Cash Collateral**") and, in support thereof, the Debtors respectfully represent as follows:

**Jurisdiction**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408.

2.      The statutory predicates for the relief sought herein are §§ 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

**Background**

3.      On November 1, 2023 (the "**Petition Date**"), the Debtors filed their Voluntary Petitions for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") and made elections to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.

4.      The Debtors continue to operate as debtors-in-possession.

5.      The Debtors manufacture, sell, and refurbish parachutes and related products for military and commercial customers in the aviation, defense, and space industries. The Debtors are a critical supplier to their customers and a key cog in the country's defense and space industry.  The Debtors filed this case for the purposes of completing going-concern sales of substantially all of the operating assets of Pioneer and Strong for the benefit of customers, suppliers, employees, and creditors.

6.      For more information on the Debtors and the reasons for the bankruptcy filings, please see the Debtors' Joint Chapter 11 Case Management Summary filed in this case (this "**Chapter 11 Case**").

4871-4744-8455, v. 3

### Summary of Prepetition Secured Indebtedness

7.      Pioneer, Strong, and Aviation Safety Resources, Inc. ("**ASR**") have separate capital structures, including pre-petition secured debt. Although this Motion seeks substantially the same relief as to the cash collateral of Pioneer and Strong, the claims, liens, and operations are separate and will remain so.   Additionally, because on the Petition Date ASR was not operating, and does not have cash collateral at this time, ASR is not a movant for purposes of this Motion.

8.      ASR's pre-petition secured indebtedness is comprised of a seller financing note from the purchase of Pioneer and an SBA loan. In March, 2022, ASR acquired Pioneer from Zodiac US Corporation ("**Zodiac**"). Specifically, on or about March 23, 2022, ASR and Zodiac entered into that certain Stock Purchase Agreement (the "**SPA**"), pursuant to which ASR purchased from Zodiac all of the issued and outstanding shares of common stock of Pioneer.  As part of the SPA, ASR executed in favor of Zodiac a Secured Promissory Note in the approximate principal amount of $2.19 million (the "**ASR Zodiac Note**") for the purchase price under the SPA. In conjunction with the ASR Note, on April 7, 2022 Zodiac filed a UCC-1 Financing Statement with the Florida Secretary of State (the "**ASR Zodiac UCC-1**"), listing Zodiac as the secured party, ASR as the debtor, and describing the collateral as "all fixtures and personal property of every kind and nature including…"

9.      Also as part of the SPA, Pioneer executed a Secured Promissory Note in favor of Zodiac (its former shareholder) in the approximate principal amount of $1 million (the "**Pioneer Zodiac Note**"). In conjunction with the Pioneer Zodiac Note, on March 29, 2022 Zodiac filed or caused to be filed a UCC-1 Financing Statement with the Delaware Department of State (the "**Pioneer Zodiac UCC-1**"), listing Zodiac as the secured party, Pioneer as the debtor, and

3

describing the collateral as "all fixtures and personal property of every kind and nature including…"  The Pioneer Zodiac Note is not cross-collateralized with the ASR Zodiac Note, such that the only potential secured debt of Pioneer to Zodiac is the Pioneer Zodiac Note.

10.    For the avoidance of doubt, the Debtors dispute the validity, extent, priority, and characterization of the claims of Zodiac under each and every interest claimed, and reserve all rights, claims, and defenses in connection therewith. For the avoidance of doubt, all claims by Zodiac against the Debtors are the subject of a bona fide dispute.

11.    In addition to the Zodiac notes, Strong and ASR have SBA EIDL loans. ASR is obligated on an SBA EIDL in the approximate amount of $161,000.00. The obligation is subject to a security agreement granting a lien on substantially all of ASR's assets. However, the lien was perfected only through a UCC-1 Financing Statement recorded in Kentucky, and not in Florida. Because ASR is a registered organization in Florida, the lien is subject to challenge.

12.    Strong's secured obligations are comprised of amounts due and owing to the U.S. Small Business Administration (the "**SBA**") under an SBA Economic Injury Disaster Loan in the amount of $150,000.00, dated June 14, 2020.  On June 29, 2020, the SBA filed a UCC-1 Financing Statement with the Florida Secretary of State (the "**SBA Strong UCC-1**"), listing the SBA as the secured party, ASR as the debtor, and describing the collateral as "all tangible and intangible personal property, including, but not limited to: …"

13.    Since the spring of 2023, the Debtors have been engaged in a concerted effort to evaluate strategic options for continuing their operations in the face of significant operating losses and the difficulties in obtaining sufficient capital to fund such losses. Those efforts were funded in part through a loan made by two of the directors, Richard Spencer and Richard Sugden

4

(in their capacity as lenders, the "**Lenders**").[1] In May 2023, the Debtors' boards authorized, and the Lenders agreed to provide a credit facility in the amount of $1 million to the Debtors. In May 2023 the Lenders funded the total amount of $700,000.00 (paid in two draws of $325,000.00 each and two draws of $25,000.00 each) (collectively, the "**Lenders Advances**"). The Lenders Advances were used to fund operating expenses and to fund payments to professionals. While the Lenders Advances were booked as unsecured loans on ASR's books when the money was loaned to and used by the Debtors, the Debtors intended the Lenders Advances to secured on a junior basis.  The Lenders are the proposed DIP Financing lenders under a $1.3 million DIP financing facility under the separate DIP Financing Motion to be filed by Pioneer, Strong, and ASR.

14.    As of the Petition Date, Pioneer and Strong had cash totaling approximately $100,000.00, and $52,000.00, respectively. As of the Petition Date, Pioneer and Strong had accounts receivable, collections for which are projected in the Budget (as defined below). Pioneer and Strong (as well as ASR) have also filed and are awaiting payment of Employee Retention Tax Credits of $85,000, $156,000, and $979,000 for ASR, Strong, and Pioneer, respectively.  Additionally, and perhaps most importantly, Pioneer and Strong are parties to at least one asset purchase agreement that will provide sufficient funds at closing to pay or reserve for the Lenders claims in full.

**Relief Requested and Grounds for Relief**

15.    As discussed above, Zodiac, as to Pioneer, the SBA, as to Strong, and, conditioned on approval of the DIP Financing Motion, the Lenders as to both of the Debtors, (collectively, the "**Pre-Petition Lenders**") may assert an interest in Cash Collateral of the

---

[1] "The Lenders are seeking a roll-up of the Lenders Advances into DIP Obligations and therefore do not believe that adequate protection is necessary; however, the Lenders reserve and preserve all rights with respect to the same."

4871-4744-8455, v. 3

respective Debtors, as that term is defined in Section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

16.      The Debtors intend to use Cash Collateral to pay operating expenses and the costs of administering these Chapter 11 cases. Accordingly, the Debtors request authority to use Cash Collateral pursuant to Section 363(c) of the Bankruptcy Code.

17.      The Debtors respectfully request the entry of an interim order in the form attached hereto as **Exhibit A** authorizing the use of Cash Collateral, substantially in accordance with the budgets (as may be amended or modified from time to time with the consent of the DIP Lender, collectively, the "**Budget**") attached hereto as **Composite Exhibit B**, to fund their operating expenses and the costs of administering these Chapter 11 cases to avoid immediate and irreparable harm to the estate pending a final hearing and the entry of a final order.  Specifically, the Debtors intend to use Cash Collateral for:

a.      Payroll;

b.      Insurance;

c.      Purchase of necessary inventory;

d.      Payment of rent and utilities;

e.      Other payments necessary to sustain continued business operations;

f.      Care, maintenance, and preservation of the Debtors' assets through and including a closing under the purchase agreements; and

g.      Costs of administration in these Chapter 11 cases.

Except as specifically authorized by law or court order, the Debtors will not use Cash Collateral to pay pre-petition obligations.

4871-4744-8455, v. 3

18.     The Debtors request authorization to use Cash Collateral immediately to fund operating expenses necessary to continue the operation of their businesses, to maintain the estates, to maximize the return on their assets through the consummation of the purchase agreements, and to otherwise avoid irreparable harm and injury to the businesses and the estates.

19.     The Debtors further request that any order authorizing the use of Cash Collateral require account debtors to pay the Debtors directly on any accounts receivable.

20.     There is insufficient time for a full hearing pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure to be held before the Debtors must use Cash Collateral. If this motion is not considered on an expedited basis and if the Debtors are denied the ability to immediately use Cash Collateral, there will be a direct and immediate material and adverse impact on the continuing operations of the Debtors' business and on the value of their assets. To continue the business activities in an effort to achieve a successful reorganization, the Debtors must use Cash Collateral in the ordinary course of business. The inability of the Debtors to meet their ordinary business expenses will require the Debtors to discontinue normal operations, which will result in irreparable injury to the Debtors and their chances for reorganization through the purchase agreements. Any such discontinuation would also materially and adversely impact the value of the Pre-Petition Lenders' collateral. Indeed, it is in the best interest of the Pre-Petition Lenders that the Debtors use Cash Collateral, because such usage will preserve the value of the collateral.

21.     "Cash Collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize the Debtors to use Cash Collateral so long as the applicable

7

secured creditors consent or are adequately protected. *See, e.g., In re Mellor,* 734 F.2d 1396, 1400 (9th Cir. 1984); *see also In re McCormick,* 354 B.R. 246, 251 (Bankr. C.D. Ill. 2006) (to use the cash collateral of a secured creditor, the debtor must have the consent of the secured creditor or must establish to the court that the secured creditor's interest in the cash collateral is adequately protected).

22.     In exchange for the Debtors' ability to use Cash Collateral in the operation of their businesses, the Debtors propose to grant to the Pre-Petition Lenders, as adequate protection, replacement liens to the same extent, validity, and priority as existed on the Petition Date.  In other words, the Debtors propose that the Pre-Petition Lenders' "floating" liens on such assets continue to "float" to the same extent, validity, and priority as existed on the Petition Date, notwithstanding Section 552 of the Bankruptcy Code.  The Debtors assert that the interests of the Pre-Petition Lenders will be adequately protected by the replacement liens, in addition to the existing equity cushions as reflected by the purchase agreements.

23.     The Debtors further request that any replacement liens or claims granted in connection with the use of Cash Collateral be subject to payment of the Carve-Out Expenses the Carve-Out Expenses as defined in the proposed form of the *Interim DIP Order Granting Debtors' Emergency Motion for Authority to Obtain Secured Postpetition Financing and Granting Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. § 364(c) and F.R.B.P. 4001* filed separately.

24.     If allowed to use Cash Collateral, the Debtors believe that they can stabilize their business operations and maintain going concern value to get to a closing under the asset purchase agreements to which the Debtors are parties.  Otherwise, the Debtors' businesses operations will cease, and the assets will have only liquidation value.

8

25.     Except as otherwise provided in any DIP financing order, this Motion is without prejudice to the rights of the Debtors or any other party to contest the extent, validity and/or priority of the Pre-Petition Lenders' asserted liens.  Indeed, the Debtors believe there are valid challenges to the claims and liens of Zodiac against Pioneer.

WHEREFORE, the Debtors respectfully request that this Court: (1) enter an interim order granting the motion and authorizing the interim use of Cash Collateral; (2) schedule a preliminary hearing on the motion on or before Monday, November 6, 2023; (3) schedule a final cash collateral hearing in accordance with Bankruptcy Rule 4001(b)(2); and (4) providing for such other and further relief as may be just and proper.

DATED: November 2, 2023

/s/ Daniel R. Fogarty
Daniel R. Fogarty (FBN 0017532)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida   33602
Telephone: (813) 229-0144
Email:  dfogarty@srbp.com
Attorneys for Debtors

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing *Debtors' Emergency Motion for Authority to Use Cash Collateral* has been furnished on November 2, 2023, by the Court's CM/ECF System to those parties receiving notice electronically.

*/s/ Daniel R. Fogarty*
Daniel R. Fogarty

**EXHIBIT A**

**Form of Interim Order**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11, Subchapter V

AVIATION SAFETY RESOURCES, INC.,       Case No. 6:23-bk-4639-GER
S.E., INC.,                             Case No. 6:23-bk-4641-GER
PIONEER AEROSPACE CORPORATION           Case No. 6:23-bk-4643-GER

      Debtors.                          *Jointly Administered under*
_____/      *Case No. 6:23-bk-4639-GER*

S.E., INC.,                             Case No. 6:23-bk-4641-GER
PIONEER AEROSPACE CORPORATION           Case No. 6:23-bk-4643-GER

      Applicable Debtors.
_____/

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR
AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM BASIS**

      THIS CASE came before the Court for hearing on _____ (the

**Hearing**") for consideration of the *Debtors' Emergency Motion for Authority to Use Cash*

*Collateral* (Doc. No. **) (the "**Motion**")[1].  The Motion seeks the entry of interim and final

orders authorizing the Debtor to use "Cash Collateral" as defined in Section 363(a) of the

Bankruptcy Code.

---

[1]  Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Motion.

The Court finds that, under the circumstances, due and sufficient notice of the Motion and the Hearing was provided to: (i) the Office of the United States Trustee for the Middle District of Florida, (ii) Zodiac, (iii) the SBA, (iv) all known secured creditors of the Debtor, (v) the Lenders, and (vi) the twenty (20) largest unsecured creditors of each Debtor, and that no other or further notice is necessary. The Court considered the Motion, together with the record and the argument of counsel at the Hearing, and it appearing that the use of Cash Collateral to the extent provided herein is necessary on an interim basis in order to avoid irreparable harm to the Debtor, and for the reasons announced on the record at the Hearing which shall constitute the decision of the Court, it is

**ORDERED**:

1.      Notice of the Motion and the Hearing on the Motion was adequate and appropriate in the current circumstances of this Chapter 11 case as contemplated by 11 U.S.C. §102(a) and Fed. R. Bankr. P. 4001(b)(2).

2.      The Motion is granted on an interim basis pending a further hearing to be conducted by the Court on _____ (the "**Continued Hearing**").

3.      The Debtors are authorized, through the date of the Continued Hearing, to use Cash Collateral including, without limitation, cash, deposit accounts, accounts receivable, and proceeds from business operations in accordance with a budget as such Budget may be amended or modified from time to time with the consent of the DIP Lender (the "**Budget**"), a copy of which is attached hereto as **<u>Exhibit A</u>**, so long as the aggregate of all expenses for each week do not exceed the amount in the Budget by more than ten percent (10%) for any such week on a cumulative basis (the "**Variance**"). Notwithstanding the foregoing, subject to the provisions of paragraph 11 of this Order, expenditures in excess of the Variance or not on the Budget will not

2

be deemed to be unauthorized use of Cash Collateral, unless the recipient cannot establish that

the expense would be entitled to administrative expense priority if the recipient had extended

credit for the expenditure.

4.      The Debtors are authorized to provide adequate protection, pursuant to sections

363(c)(2)(A) and 363(e) of the Bankruptcy Code, to the `Pre-Petition Lenders` pursuant

to the terms and conditions of this Interim Order.  As adequate protection with respect to the

`Pre-Petition` Lenders' interests in the Cash Collateral, the `Pre-Petition Lenders`

are granted a replacement lien in and upon all of the categories and types of

collateral in which they held a security interest and lien as of the Petition Date to the same

extent, validity, and priority that they held as of the Petition Date.

5.      The replacement liens or claims granted in connection with the use of Cash

Collateral under this Order shall be subject to the payment of the Carve-Out Expenses as defined

in the *Interim DIP Order Granting Debtors' Emergency Motion for Authority to Obtain Secured

Postpetition Financing and Granting Liens and Superpriority Administrative Expense Status

Pursuant to 11 U.S.C. § 364(c) and F.R.B.P. 4001* (Doc. No. **).

6.      The Debtors are entitled to collect money from parties with outstanding accounts

receivable to the Debtors and no creditor or party in interest shall interfere with the Debtors'

collection actions. The Debtors shall maintain records regarding the collection of pre-petition

amounts.

7.      The Debtors shall maintain insurance coverage for the collateral in accordance

with the obligations under the loan and security documents.

8.      The Subchapter V Trustee, the Office of the United States Trustee, or any party

with an asserted interest in the collateral, shall be entitled to request reasonable reporting from

3

the Debtors regarding the collateral. The Debtors shall be afforded a reasonable time to respond to such requests.

9.      This Order is not and shall not be construed as determinative as to whether any creditor has a valid lien on or interest in any property of the Debtors or the estates.  This Order is not and shall not be construed as determinative as to the extent or amount of any secured claim associated with any such lien.

10.      This Order is without prejudice to the Debtors' right to challenge the extent, validity, or priority of any lien or claim of any creditor and is likewise without prejudice to the right of any creditor to seek additional relief concerning Cash Collateral by subsequent motion and nothing contained in this Order shall be deemed to constitute a waiver of any party's rights.

11.      This Order is without prejudice to the Debtors' rights to seek authority by separate motion to pay monies in excess of the amounts set forth in the Budget.

12.      In accordance with Rule 4001 of the Bankruptcy Rules, the Court finds the Debtors' authorization to use Cash Collateral pursuant to this Order is necessary to avoid immediate and irreparable harm to the Debtors' estates.

13.      The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

*Attorney Daniel R. Fogarty is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within 3 days of entry of the order.*

4

# EXHIBIT A

**COMPOSITE EXHIBIT B**

**Budget**

| Pioneer Cash Forecast | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date Updated: October 31th | | | | | | | | | | | | | | | |
| Week Beginning Date | 10/30 | 11/6 | 11/13 | 11/20 | 11/27 | 12/4 | 12/11 | 12/18 | 12/25 | 1/1 | 1/8 | 1/15 | 1/22 | 1/29 | 2/5 |
| | | | | | | | | | | | | | | | |
| *Cash Flow Summary* | | | | | | | | | | | | | | | |
| Weekly Beginning Cash Balance | 223,521 | 108,624 | (59,399) | 9,071 | 14,074 | (192,220) | 3,046,199 | 2,955,899 | 2,908,814 | 2,861,729 | 2,814,644 | 2,741,759 | 2,694,674 | 2,647,589 | 2,600,504 |
| Total Payroll | | (75,000) | (31,500) | (75,000) | | (75,000) | | | | | | | | | |
| TOTAL CASH AVAILABLE AFTER PAYROLL | 223,521 | 33,624 | (90,899) | (65,929) | 14,074 | (267,220) | 3,046,199 | 2,955,899 | 2,908,814 | 2,861,729 | 2,814,644 | 2,741,759 | 2,694,674 | 2,647,589 | 2,600,504 |
| | | | | | | | | | | | | | | | |
| Cash Receipts from Operations | 55,103 | | 287,200 | 210,000 | | 147,000 | | | | | | | | | |
| Cash From DIP Borrowings | | | | | | | | | | | | | | | |
| Cash from Net Sale Proceeds | | | | | | 3,400,000 | | | | | | | | | |
| Total Cash Reciepts | 55,103 | 0 | 287,200 | 210,000 | 0 | 3,547,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | | | |
| Total Operational Expenses | (170,000) | (66,223) | (113,230) | (55,997) | (116,294) | (102,781) | (6,300) | (3,285) | (3,285) | (3,285) | (5,085) | (3,285) | (3,285) | (3,285) | (3,285) |
| TOTAL CASH BEFORE PROFESSIONAL FEE CARVEOUT | 108,624 | (32,599) | 83,071 | 88,074 | (102,220) | 3,176,999 | 3,039,899 | 2,952,614 | 2,905,529 | 2,858,444 | 2,809,559 | 2,738,474 | 2,691,389 | 2,644,304 | 2,597,219 |
| | | | | | | | | | | | | | | | |
| Total Professional Carveout Reserve Contributions | 0 | (26,800) | (74,000) | (74,000) | (90,000) | (130,800) | (84,000) | (43,800) | (43,800) | (43,800) | (67,800) | (43,800) | (43,800) | (43,800) | (43,800) |
| | | | | | | | | | | | | | | | |
| Weekly Ending Cash Balance | 108,624 | (59,399) | 9,071 | 14,074 | (192,220) | 3,046,199 | 2,955,899 | 2,908,814 | 2,861,729 | 2,814,644 | 2,741,759 | 2,694,674 | 2,647,589 | 2,600,504 | 2,553,419 |
| | | | | | | | | | | | | | | | |
| *DIP Needed* | | | | | | 267,220 | | | | | | | | | |
| DIP Reserve | | | | | | 250,000 | | | | | | | | | |
| *Footnote: The lenders can approve greater or lesser allocation to each entity with their provided consent | | | | | | | | | | | | | | | |

| Week Beginning Dated | 10/30 | 11/6 | 11/13 | 11/20 | 11/27 | 12/4 |
|---|---|---|---|---|---|---|
| **Cash Receipts From Operations** | | | | | | |
| | | | | | | |
| Updated AR Aging | | | | | | |
| A/R - Forecast / Backlog | | 55,103 | | 156,755 | 210,000 | |
| A/R - Past Due | | | | | | |
| Strong /Boeing/DLAPayments to Pioneer | | | | 130,445 | | 147,000 |
| DIP Interest and Legal Fees | | | | | | |
| Misc | | | | | | |
| | | | | | | |
| **Total Cash Receipts from Operations** | **55,103** | **0** | **287,200** | **210,000** | **0** | **147,000** |

| Week Beginning Dated | 10/30 | 11/6 | 11/13 | 11/20 | 11/27 | 12/4 |
|---|---|---|---|---|---|---|
| **Cash Disbursements** | | | | | | |
| | | | | | | |
| Payroll - Wages/Taxes (Union) | | | | | | |
| Payroll - Wages/Taxes (Non Union) | | 75,000 | | 75,000 | | 75,000 |
| Extra Payroll Due To Loss of Furlough Arrangement | | | | | | |
| Payroll - Fees | | | | | | |
| EE Benefits - 401k | | 0 | | 0 | | 0 |
| EE Benefits - Union Retirement | | | | | | |
| EE - HSA/FSA Contributions | | | 3,000 | | | |
| Health Insurance | | | 27,000 | | 0 | |
| Non Medical | | | 1,500 | | | |
| **Total Paycor Payroll** | **0** | **75,000** | **31,500** | **75,000** | **0** | **75,000** |
| | | | | | | |
| ASR KY Rent | | | | | | |
| **Total ASR Kentucky** | **0** | **0** | **0** | **0** | **0** | **0** |
| | | | | | | |
| Bloomfield | 0 | 30,000 | | | | 30,000 |
| Safran | | | | | | |
| Storage | | | | | | |
| **Total Building Rent** | **0** | **30,000** | **0** | **0** | **0** | **30,000** |
| | | | | | | |
| Utilities | 0 | | 15,000 | | | |
| **Total Utilities** | **0** | **0** | **15,000** | **0** | **0** | **0** |
| | | | | | | |
| Contract Labor | | 0 | 20,000 | | | |
| Agent | | | | | | |
| Strategic Bonus | | | | | | 15,000 |
| **Total Contractor Payments** | **0** | **0** | **20,000** | **0** | **0** | **15,000** |

| Week Beginning Dated | 10/30 | 11/6 | 11/13 | 11/20 | 11/27 | 12/4 | 12/11 | 12/18 | 12/25 | 1/1 | 1/8 | 1/15 | 1/22 | 1/29 | 2/5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Professional Fees Carveout Reserve** | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Asgaard | | 24,000 | 72,000 | 72,000 | 72,000 | 72,000 | 40,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Stichter, Reidel, Blain & Postler | | 0 | 0 | 0 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 |
| MNAT | | 0 | 0 | 0 | 0 | 0 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| Erissa / Pension Plan Counsel | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Subchapter 5 Trustee | | 0 | 0 | 0 | 0 | 0 | 16,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Safran Counsel | | 0 | 0 | 0 | 0 | 40,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Tax Accounting | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 24,000 | 0 | 0 | 0 | 0 |
| Subchapter 5 Trustee - Other | | 800 | 0 | 0 | 0 | 800 | 0 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| **Total Professional Fees Funded Carveout** | 0 | 26,800 | 74,000 | 74,000 | 90,000 | 130,800 | 84,000 | 43,800 | 43,800 | 43,800 | 67,800 | 43,800 | 43,800 | 43,800 | 43,800 |

## Strong Enterprises Cash Forecast

Date Updated: October 31th

| Week Beginning Date | 10/30 | 11/6 | 11/13 | 11/20 | 11/27 | 12/4 | 12/11 | 12/18 | 12/25 | 1/1 | 1/8 | 1/15 | 1/22 | 1/29 | 2/5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Cash Flow Summary* | | | | | | | | | | | | | | | |
| Weekly Beginning Cash Balance | 52,939 | 55,173 | 108,001 | 84,883 | 52,959 | 42,324 | 797,585 | 776,585 | 765,635 | 754,685 | 743,735 | 726,885 | 715,935 | 704,985 | 694,035 |
| Total Payroll | | (49,000) | | (49,000) | | (49,000) | | | | | | | | | |
| TOTAL CASH AVAILABLE AFTER PAYROLL | 52,939 | 6,173 | 108,001 | 35,883 | 52,959 | (6,676) | 797,585 | 776,585 | 765,635 | 754,685 | 743,735 | 726,885 | 715,935 | 704,985 | 694,035 |
| Open Orders | 22,546 | 5,300 | 1,120 | 314 | 7,463 | 6,699 | | | | | | | | | |
| New Deposits and Orders (est.) | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | | | | | | | |
| DIP Financing | | | | | | 800,000 | | | | | | | | | |
| Net Sale Proceeds | | | | | | | | | | | | | | | |
| Paradigm $114k Receivable Plus Other Orders to be Fulfilled | | 113,966 | | 41,000 | 41,000 | 41,000 | | | | | | | | | |
| Total Cash Reciepts | 22,546 | 124,266 | 6,120 | 46,314 | 53,463 | 852,699 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Operational Expenses | (20,312) | (15,738) | (10,738) | (10,738) | (41,598) | (15,738) | | | | | | | | | |
| TOTAL CASH BEFORE PROFESSIONAL FEE CARVEOUT | 55,173 | 114,701 | 103,383 | 71,459 | 64,824 | 830,285 | 797,585 | 776,585 | 765,635 | 754,685 | 743,735 | 726,885 | 715,935 | 704,985 | 694,035 |
| Total Professional Carveout Reserve Contributions | 0 | (6,700) | (18,500) | (18,500) | (22,500) | (32,700) | (21,000) | (10,950) | (10,950) | (10,950) | (16,850) | (10,950) | (10,950) | (10,950) | (10,950) |
| Weekly Ending Cash Balance | 55,173 | 108,001 | 84,883 | 52,959 | 42,324 | 797,585 | 776,585 | 765,635 | 754,685 | 743,735 | 726,885 | 715,935 | 704,985 | 694,035 | 683,085 |
| | | | | | | | | | | | | | | | |
| *DIP Needed* | | | | | | 267,220 | | | | | | | | | |
| DIP Reserve | | | | | | 250,000 | | | | | | | | | |
| **Footnote: The lenders can approve greater or lesser allocation to each entity with their provided consent | | | | | | | | | | | | | | | |

| Week Beginning Date | 10/30 | 11/6 | 11/13 | 11/20 | 11/27 | 12/4 |
|---|---|---|---|---|---|---|
| **Monthly Operational Costs** | | | | | | |
| Rent 6448 | 8,313 | | | | 8,313 | |
| Rent 6503 A&B | 6,998 | | | | 6,998 | |
| Phone/Internet | | | | | 508 | |
| Electric | | | | | 2,000 | |
| Trash | | | | | 242 | |
| Health Care | | | | | 5,269 | |
| Dental Care | | | | | 1,742 | |
| Estimated Outbound & Inbound Shipping | | | | | 1,500 | |
| Sales Tax | | | | | 500 | |
| Estimated Outbound & Inbound Shipping | | | | | 1,500 | |
| Phone System | | | | | 280 | |
| Copier Lease | | | | | 87 | |
| ERP Hosting | | | | | 234 | |
| Estimated Outbound & Inbound Shipping | | | | | 1,500 | |
| Retirement Admin Fee | | | | | 186 | |
| **Total Monthly Operational Costs** | **15,312** | | | | **30,860** | |
| | | | | | | |
| **COD/CIA Materials Costs** | | | | | | |
| COGS | 5,000 | 10,738 | 10,738 | 10,738 | 10,738 | 10,738 |
| Misc. Operating Expenses Expenses | | 5,000 | | | | 5,000 |
| **Total COD/CIA Materials Costs** | **5,000** | **15,738** | **10,738** | **10,738** | **10,738** | **15,738** |
| | | | | | | |
| **Total Operating Cash Disbursements** | **20,312** | **15,738** | **10,738** | **10,738** | **41,598** | **15,738** |

| Professional Fees Carveout Reserve | 10/30 | 11/6 | 11/13 | 11/20 | 11/27 | 12/4 | 12/11 | 12/18 | 12/25 | 1/1 | 1/8 | 1/15 | 1/22 | 1/29 | 2/5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asgaard | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Stitcher | 0 | (6,000) | (18,000) | (18,000) | (18,000) | (18,000) | (10,000) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) |
| MNAT | 0 | 0 | 0 | 0 | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) |
| Erisa Legal Fees | 0 | 0 | 0 | 0 | 0 | 0 | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) |
| Conflicts Counsel | 0 | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) |
| Claims Agent | 0 | 0 | 0 | 0 | 0 | 0 | (4,000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Subchapter 5 Trustee Fees | 0 | 0 | 0 | 0 | 0 | (10,000) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) |
| Safran Counsel Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (6,000) | 0 | 0 | 0 | 0 |
| Tax Accounting Fees | 0 | (200) | 0 | 0 | 0 | (200) | 0 | (200) | (200) | (200) | (200) | (200) | (200) | (200) | (200) |
| Secured Debt Legal Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Professional Fees Funded Carveout** | **0** | **6,700** | **18,500** | **18,500** | **22,500** | **32,700** | **21,000** | **10,950** | **10,950** | **10,950** | **16,950** | **10,950** | **10,950** | **10,950** | **10,950** |